STATE OF NORTH CAROLINA v. RANSOM KIZIAH AND TROY KIZIAH.

(Filed 10 April, 1940.)

**1. Criminal Law § 78d—**

Defendants must make proper motions for judgment as of nonsuit during the course of the trial in order to present upon appeal the question of the sufficiency of the evidence. C. S., 4643. However, in the present case the evidence *is held* sufficient to be submitted to the jury and to sustain their verdict of guilty of assault upon a female.

**2. Rape § 6: Indictment § 22—**

An indictment charging the defendants with rape will support a verdict of guilty of assault upon a female when warranted by the evidence, C. S., 4639, 4640.

**3. Criminal Law § 41e—**

Character evidence of a witness is testimony as to the witness' general reputation or standing in the community and not as to any particular acts, based upon what the character witness has heard or learned as a matter of hearsay.

**4. Same—**

After a character witness is once qualified, he or she may be cross-examined as to the source of his or her knowledge but the answers go to the credibility of the witness rather than to the competency.

**5. Same: Criminal Law § 30—Where transcript at preliminary hearing is offered to impeach witness, defendants should offer only relevant portions of transcript and disclose purpose for which it is offered.**

Where defendants seek to introduce the whole of the transcript taken in the recorder's court upon the preliminary hearing without qualification or limitation and without disclosing that their purpose in offering the transcript is to impeach the credibility of the prosecuting witness by

showing that on the preliminary hearing she had made statements repugnant to her testimony at the trial, the action of the trial court in excluding same will not be held for error, since the court must know the purpose for which the evidence is offered in order to pass upon its relevancy and competency, and further, in this case the inconsistent statements related to collateral matters and plaintiffs were not prejudiced by the exclusion of the transcript.

**6. Rape § 9—**

A charge to the effect that if defendants indecently fondled the prosecuting witness against her will in order to induce her to submit to them, defendants would be guilty of an assault upon a female but not of an assault with intent to commit rape, *is held* without error upon defendants' appeal from a conviction of an assault upon a female.

**7. Criminal Law § 53f—**

If defendants desire a more definite charge on subordinate features of the case they must aptly tender proper prayers for instruction.

APPEAL by defendants from *Bobbitt, J.,* at August Term, 1939, of CALDWELL. No error.

The defendants were indicted on a bill of indictment charging them with rape on one Elizabeth Holman. The record shows: "The Solicitor for the State in open court announced that he would not ask for a verdict of guilty of the capital offense of rape, but would ask for a verdict of guilty of an assault with intent to commit rape." The jury returned for their verdict as to both defendants "Guilty of assault upon a female." C. S., 4215. The judgment of the court below as to both was: "That the defendants be confined in the common jail of Caldwell County for the term of 18 months and assigned to work upon the roads under the control and supervision of the State Highway and Public Works Commission."

The evidence on the part of the State tended to show that the prosecuting witness, Elizabeth Holman, was a female 17 years of age. That she had never had intercourse with any man. That the defendants were married men—Ransom Kiziah had a wife and two children, and Troy Kiziah a wife and four children. That on Sunday evening, about 1:30, while on her way to Lenoir to get some ice cream for her sister, Elizabeth Holman met defendant Ransom Kiziah and his brother Troy Kiziah. She had come home the night before with Ransom Kiziah, who called himself Herman and said he was unmarried. Ransom Kiziah asked her if she wanted to ride around, but she declined, but agreed to ride if she was let out in town. She got in the car, a four-door Ford sedan, got in the back seat and Ransom got in beside her. Troy was in the front seat and drove the car. When they got down to the forks of the road to go to Lenoir, they turned away on Zack's Forks Road. They went on up the road and she began crying and begging them to let her out. She

continued to cry and Ransom put his hand over her mouth. They went about eight miles and stopped on the side of the road. Ransom asked her, "Have you ever had intercourse with anyone?" and she said, "No, I am not going to," and he said, "You will, too." They drove up in the woods and she was crying and hollering and trying to get out. Troy held her and Ransom had intercourse with her. They had a knife and threatened to kill her and when Ransom got through he held her and Troy had intercourse with her.

The prosecuting witness proved a good reputation and was corroborated in many respects.

The defendant Ransom Kiziah at first denied the charge. He afterwards set up the defense that the intercourse was by consent and in fact Troy Kiziah denied he had intercourse. Upon the conviction of both of an assault upon a female and judgment pronounced, the defendants made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State.*
*Pritchett & Strickland for defendants.*

CLARKSON, J. There was no request made by defendants for nonsuit in accordance with N. C. Code, 1935 (Michie), sec. 4643 (same as 567 in civil actions). The evidence was sufficient to be submitted to the jury on all aspects of the crime. The defendants waived their right to maintain the insufficiency of the evidence to take the case to the jury by not making a motion as of nonsuit thereon at the close of the evidence. *Gibbs v. Telegraph Co.,* 196 N. C., 516; *Murphy v. Power Co.,* 196 N. C., 484 (494). Where the defendant does not move for nonsuit as provided by sec. 567 (4643 in criminal actions) in the lower court he waives his right to have the insufficiency of the evidence to be submitted to the jury considered on appeal. *Lee v. Penland,* 200 N. C., 340; *Debnam v. Rouse,* 201 N. C., 459; *Harrison v. Ins. Co.,* 207 N. C., 487.

Section 4639 is as follows: "On the trial of any person for rape, or any felony whatsoever, when the crime charged includes an assault against the person, it is lawful for the jury to acquit of the felony and to find a verdict of guilty of assault against the person indicted, if the evidence warrants such finding; and when such verdict is found the court shall have power to imprison the person so found guilty of an assault, for any term now allowed by law in cases of conviction when the indictment was originally for the assault of a like character."

Section 4640: "Upon the trial of any indictment the prisoner may be convicted of the crime charged therein or of a less degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime."

The defendants contend: "1. That there was error in the ruling of the court below in permitting the testimony of Mrs. S. Cline as to the good character of the prosecuting witness, Elizabeth Holman, her mother and her father, after she had said she did not know their general reputation." This contention cannot be sustained. The record is not exactly in accord with the defendants' contentions. The record is as follows:

Mrs. S. Cline, witness for the State, testified: "I know C. H. Holman. I have known him for over a year. I have known Mrs. Holman for about the same time. I know Elizabeth Holman. She worked for me about one year. She worked from last June or July until about April of this year. I don't know her general reputation. Q. Do you know the general character and reputation of Mrs. Holman in that community? Ans.: I have just heard people say that they were nice. Q. Do you know the general reputation of Mr. C. H. Holman? Ans.: I don't hardly know what to say, because I have not been out much and I have not heard anybody say much and that is all I know. (Defendants object—overruled—exception)—(Cross-examination) I don't know where the Holman family live. I have not heard anybody talk about Mr. Holman. The opinion I give is just my own personal opinion. If there was anything bad I would have known it. Q. From what you have heard of Mrs. C. H. Holman and the reputation of Elizabeth for that length of time, do you think that you can or cannot say as to her general reputation? Ans.: Yes, it is good. I don't know where the Holman family live. I have not heard anybody talk about Mr. Holman. The opinion I give is just my own personal opinion. If there was anything I would have known it. (Defendants object and move to strike from record—motion denied and defendants except.) I had not heard anyone speak about Elizabeth Holman. She worked for me. I have not heard anyone say anything about the other members of the family. The girl was recommended to me. My mother knew her mother and suggested that I hire Mr. Holman's daughter. I did and when she came I found out she was a nice girl. We had never heard anything but what she was a real good girl. That is the basis of my testimony here today."

Mrs. R. L. Holloway, witness for the State, testified: That she knew C. H. Holman and Mrs. Holman; had known them for thirty or thirty-five years. That she knew Elizabeth and Edith; that all of them had good reputations. (Cross-examination): "Sometimes I see the Holmans every day. I just see the young ladies as they pass the road. I do not visit in their home. The young ladies have never been to my house. The

general report is that their character is good. I can't recall right now any person that I heard say anything about their character. I have heard nothing said for the last two months concerning their character. I just said I haven't heard anything bad. Their character is good as far as I know. I haven't heard anything bad. People speak well of them. I cannot recall when I last heard them discussed."

Mrs. Etta Powell, witness for the State, testified: "I know Carl Holman. I live about a half mile from him. I know his wife and two daughters. I have known Carl 35 or 40 years and his character is good. General reputation of Elizabeth and Edith is good. (Cross-examination): I haven't visited in their home lately. It has been four or five years since I was there. The young ladies do not visit in my home. I have not heard anybody say anything about their character. My statement is based upon my opinion. I don't know what the people in the community at large say about them."

Sylvester St. John, witness for the State, testified: "I know Carl Holman; his wife and his two daughters. I have known Carl 20 or 25 years and his wife about 10 years. Their general reputation is good. General reputation of the two daughters is good. (Cross-examination): I haven't heard anybody talk about their general reputation at all. The opinion that I give is my belief because I think I know them."

T. L. Holder, witness for the State, testified: "I know Mr. and Mrs. Holman and the girls. Mr. Holman has a good reputation; so has Mrs. Holman and the two girls. I make this statement from my own personal knowledge and experience with them. I do not know their general reputation in the community in which they live." The matter of general character was thoroughly discussed in S. v. Steen, 185 N. C., 768 (770).

The decisions in this State have consistently held that reputation is the general opinion, good or bad, held of a person by those of the community in which he or she resides. This is eminently a matter of hearsay based upon what the witness has heard or learned, not as to any particular acts, but as to the general opinion or standing in the community.

After a character witness is once qualified, he or she may be cross-examined as to the source of his or her knowledge, but the answers go to the credibility of the witness rather than to the competency. S. v. Holly, 155 N. C., 485; S. v. Carden, 209 N. C., 404 (412).

We give the testimony of other witnesses not objected to as to the general reputation of the Holmans. Taking the testimony of Mrs. Cline as a whole, we cannot see how it would constitute prejudicial or reversible error. S. v. Steen, supra, p. 776. In fact, on cross-examination of Mrs. Cline by defendants as to the general reputation of C. H. Holman and Elizabeth Holman, she answered, "Yes, it is good."

The defendants contend: "2. That the court below committed error in excluding the stenographic report of the evidence of Elizabeth Holman and her father, C. H. Holman, taken at the preliminary hearing for the purpose of impeaching the two said witnesses." This contention cannot be sustained.

In the record is the following: Miss Mae Puitt, witness for the defendants, testified: "I am a stenographer in town. Was appointed by the court to take the evidence at the preliminary hearing in this case. I did take it, transcribed it and this document is a correct transcription of the evidence given in that court." Defendants then offered as evidence the entire transcript of the evidence given in that court. Defendants then offered as evidence the entire transcript of the evidence taken before the recorder, this entire transcript having been offered without qualification or limitation as to the purpose for which offered. Objection by the State, sustained, defendants except.

In 20 American Jurisprudence "Evidence," p. 597, part sec. 711, is the following: "An official reporter who has taken stenographic notes of the testimony of a witness given at a former trial may be permitted to testify therefrom as to the contents of the witness' testimony; and this rule applies although he has no recollection upon the subject and must depend upon his notes entirely. The stenographic notes are also admissible in evidence to reproduce the testimony of an absent witness, when a proper foundation for their admission has been laid. Thus, a copy of the stenographic report of the entire testimony at a former trial, supported by the oath of the stenographer that it is a correct transcript of his notes and of the testimony of the deceased witness, is competent evidence of what the deceased witness said." *Cooper v. R. R.,* 170 N. C., 490 (494).

In *Edwards v. Sullivan,* 30 N. C., 302 (304), it is written: "The first objection is directly and fully answered by the case of *Ingram v. Watkins,* 1 Dev. and Bat. Rep. (18 N. C.), 442, where it was held, that to impeach the credibility of a witness, by proving that he swore differently as to a particular fact on a former trial, it is not necessary that the impeaching witness should be able to state all that the impeached witness then deposed. It is sufficient, if he is able to prove the repugnancy as to the particular fact, with regard to which it is alleged to exist."

In Greenleaf on Evidence, 16th Ed., Vol. 1, part sec. 461, at p. 590, we find: "Another mode of discrediting a witness is by showing (either through cross-examination or by other witnesses) that the witness has at another time stated the opposite of what he now states or has otherwise varied from his present story. Here, 'that which sets aside his credit and overthrows his evidence,' in the words of *Chief Baron Gilbert,* is 'the repugnancy of his evidence,' 'inasmuch as contraries cannot be true,' and

therefore he must be in error in at least one of the two statements; and if in error once, then perhaps also in other undetected instances. The probative value of this process—showing error and the capacity to err— is therefore much the same as in that the preceding section, though the mode is somewhat different. The probative force thus arising merely from this inconsistency and the apparent falsity of one of the two statements, it follows, on the one hand, that the admission of the prior inconsistent statement does not violate the Hearsay Rule, and, on the other hand, that it is not to be taken as affirmative evidence of the fact stated in it; for the reason, in both cases, that it is not offered as a testimonial assertion, but only as inconsistent with the present statement." N. C. Handbook of Evidence (Lockhart), 2d Ed., sec. 285.

In Wharton's Criminal Evidence, Vol. 3, pp. 2247-8, sec. 1363, is the following: "A witness may be impeached by proof of a contrary deposition taken at a time prior to the trial. A witness may also be contradicted by proof of prior contradictory statements made before a grand jury, at a preliminary hearing, at a coroner's inquest, or on a former trial or hearing of the same case. But only that part of the trancript of former testimony should be admitted for this purpose as is contradictory to the present testimony. Such prior inconsistent testimony may be shown, not only by the stenographer's notes, but by any witness who heard and remembers it." The testimony taken by the stenographer on a former hearing was offered "without qualification or limitation as to the purpose for which offered."

In the brief of defendants they now contend that the evidence was inconsistent in two particulars brought out on cross-examination.

We cannot see what bearing the question of where and under what circumstances the prosecuting witness met one of the defendants on the day before the alleged crime was committed, and which party walked in front on the way home, could have on the question of assault on the following day. We cannot see how the question of whether or not a particular doctor was drunk on the night after the commission of the crime could affect the issue in the case. The State contends (which we think correct) that all this matter was brought out on cross-examination and is entirely collateral and immaterial to the issue and should have been excluded. *S. v. Patterson,* 24 N. C., 346; *S. v. Carden,* 209 N. C., 404; *S. v. Roberson,* 215 N. C., 784.

Before a court can pass intelligently upon the evidence which a party desires to offer, it is necessary that he know what it is so that he may determine its bearing upon the issues. The defendants did not state what they expected to prove by the transcript of the testimony which they attempted to offer. We think that the court below was justified in refusing to admit the whole transcript in evidence.

In *In re Smith's Will,* 163 N. C., 464 (466-7), we find: "We may add these authorities to those already cited upon the general question that the party asking the question, which is excluded, must disclose to the court what he expects to prove by the witness. *Overman v. Coble,* 35 N. C., 1; *S. v. Pierce,* 91 N. C., 606; *Boney v. R. R.,* 155 N. C., 95; *Whitmire v. Heath,* 155 N. C., 304. The same rule prevails in other jurisdictions. *In re Pinney's Will,* 27 Minn., 280. We said in the *Whitmire case,* 'A court cannot pass intelligently upon evidence unless it knows what it is, in order that its bearing upon the issue may be determined. The defendant should have stated what he expected to prove; otherwise the question was properly excluded, not because it is incompetent, but because it cannot be seen that it is. The court must judge of its competency and materiality—not the counsel. This is the well settled practice and the rule of reason.' "

Wharton's Crim. Ev., 3rd Vol., pp. 2244-5-6, sec. 1360: "A witness is not to be discredited because of a discrepancy as to a wholly immaterial matter. In application of the rule forbidding contradiction or impeachment of a witness upon immaterial or collateral matters, it is held that, to be impeaching, the prior statement must not only be contradictory to his testimony, but, also, must have reference to matters relevant to his testimony and the case. In other words, the statement which it is intended to contradict must involve facts in evidence, and the varying statements sought to be shown must be relevant to the issues. It is, therefore, a well-established rule that the witness cannot be impeached by the proof of prior statements inconsistent with his testimony on the trial which concern a collateral or irrelevant matter, and evidence by other witnesses on such matters is inadmissible. Accordingly, it is not proper to show that in another unconnected proceeding the witness made contradictory statements. To this rule there is, of course, an exception with respect to prior statements showing the existence of bias, prejudice, or interest denied by the witness."

The defendants contend: "3. That the court below committed error in its charge as set forth in Assignment of Error No. 12, in defining the conduct of the defendants which would constitute an assault upon a female." This contention cannot be sustained.

The jury acquitted defendants of an assault with intent to commit rape; therefore the charge on this aspect need not be considered. As to the charge of an assault on a female, the court below charged: "Now, an assault is the intent, offer or attempt by force or violence to do an injury, that is bodily hurt, to the person of another. It must be intentional. If a person puts his hand upon another in anger, such constitutes an assault. If a person restrains another by force, by holding against the will of such person, such would be an assault. An assault

thus defined, if made upon a female person, is known in law as an assault upon a female.  . . .  Now, a conviction of an assault with intent to commit rape by force is not warranted by proof that the persons or person accused against the will of the female person upon whom the crime is alleged to have been committed indecently fondled her with intent to induce her thereby to submit to his embrace.  If the jury is satisfied from the evidence beyond a reasonable doubt that the person or persons accused were guilty of such conduct, such person or persons would be guilty of an assault upon a female, but would not be guilty of an assault with intent to commit rape."

Under the facts and circumstances of this case, we see no error in the above charge.  The question of an assault on a female is gone into at some length in *S. v. Williams,* 186 N. C., 627.  We think that case fully justifies the charge in the present case.  *S. v. Hill,* 181 N. C., 558 (560) ; *S. v. Gooding,* 196 N. C., 710.  In fact, the defendants having failed to make motions for nonsuit (C. S., 4643) waived their right as to the insufficiency of evidence to warrant a conviction.  *S. v. Hayes,* 187 N. C., 490.

The defendants contend: "4. That the court below committed error in failing to charge the jury to some extent upon the evidence of the case, and in failing to charge the jury upon the law relative to a simple assault in accordance with cases: *S. v. Brooks,* 76 N. C., 1, and *S. v. Nash,* 109 N. C., 824."  This contention cannot be sustained.

We think the charge sufficient in law and does not impinge C. S., 564. If the defendants wanted more definite charge on some subordinate feature they should have presented same by proper prayers for instruction. *School District v. Alamance County,* 211 N. C., 213 (226).  We think none of the exceptions and assignments of error can be sustained.

Upon the whole record we can see no prejudicial or reversible error. The case was carefully tried.  The charge sets forth fully the law applicable to the facts.  The charge is able, clear and shows thought and painstaking.  We find

No error.