STATE OF NORTH CAROLINA v. WILLIE HORACE BRYANT

No. 89

(Filed 15 March 1972)

1. Rape § 5— sufficiency of evidence

The State's evidence was sufficient to be submitted to the jury on the issue of defendant's guilt of rape where it tended to show that defendant had sexual intercourse with the prosecutrix after choking her and threatening her with a knife.

2. Criminal Law § 75— in-custody statements — absence of waiver of counsel — admission for impeachment purposes

In this rape prosecution, defendant's in-custody admissions that he had choked the prosecutrix and had placed a knife at her side prior to the acts of intercourse were properly admitted for the limited purpose of impeaching defendant's testimony at the trial, notwithstanding defendant had not waived his right to counsel when the in-custody statements were made.

3. Rape § 6— failure to submit assault with intent to rape

In this prosecution for rape, the trial court did not err in failing to submit to the jury the lesser included offense of assault with intent to commit rape, where all the evidence, including defendant's testimony, disclosed completed acts of intercourse, and the only factual dispute was whether the acts were voluntary or as a result of defendant's use of force.

Chief Justice BOBBITT dissenting.

Justice SHARP joins in dissenting opinion.

APPEAL by defendant from *Cowper, J.,* August 16, 1971 Criminal Session, NASH Superior Court. This case was docketed and argued at the Fall Term 1971 as No. 159.

The defendant, Willie Horace Bryant, by grand jury indictment proper in form, was charged with having committed the capital felony of rape upon Dorothy Whitehead. The alleged offense occurred in Nash County on June 5, 1971.

Upon arraignment the defendant, through court-appointed counsel, entered a plea of not guilty. The record shows a jury acceptable both to the State and to the defendant, was selected and empaneled.

At the trial, Dorothy Whitehead, the prosecutrix, gave testimony here summarized except when quoted. On the night of June 5, 1971, she, her two children (ages three and four), and her cousin drove to her aunt's house a distance of about one-half mile from where the witness lived. "After I put my cousin out I started on my way (home) and I heard someone holler and I thought it was her so I stopped . . . . When I did, Willie Horace Bryant jumped in the car with me. . . . After he jumped in he asked me to take him to Shorty Bridges. I noticed he had a knife in his hand. . . . He was the one who directed me. . . . Each time I refused to do something he would stick the knife in my side."

The witness testified she drove, at defendant's direction, to a wooded area where he forced her to remove all her clothes and to submit to two acts of intercourse. When she attempted to resist he choked her and threatened her further by placing an open knife at her side. After the second act he permitted her to put on her clothes. In the meantime he had placed his open knife on the instrument board of the vehicle. While he was dressing outside the car she hid the knife under the seat and delivered it to the officers at the time she reported to them the full story of what had occurred.

After re-entering the highway from the wooded area, the witness saw an outside drink box at a closed filling station. She asked the defendant to get her a soft drink. When he started toward the drink box she hurriedly drove away and immediately reported to members of her family and to the officers, describing fully what had occurred. She told the officers

State v. Bryant

the defendant had choked her and threatened her with the knife which she delivered to the officers.

After defense counsel vigorously cross-examined the prosecuting witness attempting to impeach her, the State for purpose of corroboration examined Deputy Sheriff Strickland who testified she reported to him and Sheriff Womble that the defendant had choked her and had placed the open knife at her side. This knife she recovered and delivered to the officers.

The defendant testified in his own defense. He said he stopped Dorothy's car and asked her to drive him to Shorty Bridges. She agreed. Thereafter, he had sexual relations with her twice, but with her consent—in fact at her suggestion. He admitted, however, at the time he entered the car, "I had the knife because I'm scared to walk along the highway. . . . I didn't close it because it was in my pocket. . . . The reason I didn't take the knife out was because I didn't know what I was liable to run into when I got in the car." On cross-examination the solicitor, for purpose of impeachment, asked the defendant if he had not told Officers Merritt and Strickland that he had choked the girl and put the knife to her side. He denied having made the statements.

After the defense rested, the State, for purpose of impeachment, called Deputy Sheriff Strickland who testified: "Officer Merritt and I brought him on over to the office and read the warrant to him and gave him a copy of it and he told me that he got in the car with Dorothy, took this switchblade pocketknife and held it in her side and told her to take him to Shorty Bridges' house. . . . (W)hen they got to Taylor's Store he made her turn right and . . . pull into a farm path . . . he told her he wanted to have intercourse with her. . . . (S)he first refused him and he took his hands and put around her neck and choked her with both of his hands." The solicitor offered the statements solely for the purpose of impeaching the defendant's testimony. The court was careful to instruct the jury that it was admitted for that purpose only.

The court charged the jury to return a verdict of (1) guilty of rape, or (2) guilty of rape with a recommendation the punishment be imprisonment for life in the State's prison, or (3) not guilty. Defense counsel requested the court to submit, as a permissible verdict, assault with intent to commit rape. The court refused and the defendant excepted.

The jury returned its verdict finding the defendant guilty of rape with a recommendation the punishment be imprisonment for life in the State's prison. From the judgment of the court in accordance with the jury's verdict, the defendant appealed.

*Robert Morgan, Attorney General, by Associate Attorney General Walter E. Ricks, III and Deputy Attorney General R. Bruce White, Jr., for the State.*

*James E. Ezzell, Jr., and Thomas W. Henson for defendant appellant.*

HIGGINS, Justice.

[1] The State's evidence discloses ample support for every essential element of the capital offense charged in the indictment. The defendant as a witness for himself corroborates all essential elements of the offense except the use of force. Although he claimed the prosecuting witness consented, even so, he admitted when he approached her automobile he had an open knife in his pocket, ". . . (B)ecause I didn't know what I was liable to run into when I got in the car." The evidence required its submission to the jury on the capital felony charged. *State v. Shutt,* 279 N.C. 689, 185 S.E. 2d 206; *State v. Primes,* 275 N.C. 61, 165 S.E. 2d 225; *State v. Carter,* 265 N.C. 626, 144 S.E. 2d 826; *State v. Bruton,* 264 N.C. 488, 142 S.E. 2d 169; *State v. Thompson,* 256 N.C. 593, 124 S.E. 2d 728; *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431.

[2] The defendant stressfully contends he is entitled to a new trial upon the ground the court committed error in permitting Officers Strickland and Merritt, over his objection, to testify with respect to his in-custody admissions that he had choked the prosecuting witness and had placed a knife in her side prior to the acts of intercourse. While there was evidence he had been given the required warnings, it was admitted he had not waived his right to counsel, had not been given a voir dire hearing, and the court had not found facts showing his statements and admissions were voluntary.

In support of his demand for a new trial the defendant cites *State v. Catrett,* 276 N.C. 86, 171 S.E. 2d 398; *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694; and *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561.

In particular the defendant relies on the following from Catrett: ". . . (I)n-custody statements attributed to a defendant, when offered by the State and objected to by the defendant, are inadmissible *for any purpose* unless, after a voir dire hearing in the absence of the jury, the court, based upon sufficient evidence, makes factual findings that such statements were voluntarily and understandingly made by the defendant after he had been fully advised as to his constitutional rights. . . . (T)estimony . . . absent a voir dire hearing and factual determinations as indicated above, was not admissible either as substantive evidence or for impeachment purposes."

Catrett was decided on June 6, 1970, and was based on our interpretation of the exclusionary rule in Miranda. Some other appellate courts made this same interpretation. However, on February 24, 1971, the Supreme Court of the United States decided *Harris v. New York,* 28 L.Ed. 2d 1, reviewing the Miranda exclusionary rule. In *Harris* the Court held "that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements" which were made during in-custody interrogation, without counsel, and without waiver of rights.

In our case the use of the defendant's in-custody admissions to impeach and contradict his testimony before the jury was proper and his objections thereto are not sustained. The defendant's admissions were not offered to make out the prosecution's case. They were offered to tear down the defendant's defense. *State v. Lynch, supra,* did not involve admissions offered for the purpose of impeaching the defendant's testimony before the jury.

The decision in *Harris* warranted the use of the impeaching testimony. In view of the importance we attach to the *Harris* decision and its current unavailability to some of our trial courts, we quote extensively from it:

"Some comments in the Miranda opinion can indeed be read as indicating a bar to use of an uncounseled statement for any purpose, but discussion of that issue was not at all necessary to the Court's holding and cannot be regarded as controlling. Miranda barred the prosecution from making its case with statements of an accused made while in custody prior to having or effectively waiving counsel.

It does not follow from Miranda that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards.

\* \* \* \* \* \* \*

It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the Weeks doctrine would be a perversion of the Fourth Amendment.

. . . (T)here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility. 347 U.S., at 65, 98 L.Ed. at 507.

\* \* \* \* \* \* \*

Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. See *United States v. Knox,* 396 U.S. 77, 24 L.Ed. 2d 275, 90 S.Ct. 363 (1969) ; cf *Dennis v. United States,* 384 U.S. 855, 16 L.Ed. 2d 973, 86 S.Ct. 1840 (1966). Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment.

The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements."

[3] The defendant has objected to the court's failure to submit to the jury the lesser included offense of assault with in-

State v. Bryant

tent to commit rape. This objection cannot be sustained. All the evidence, including the defendant's testimony, disclosed completed acts of intercourse. The factual dispute was whether the acts were voluntary or as a result of defendant's use of force. Even consent if induced by fear, fright, or coercion, is equivalent to physical force. *State v. Primes, supra; State v. Carter, supra.* The court should not submit an issue in the absence of some evidence which tended to support it. The rule is stated in *State v. McNeil,* 277 N.C. 162, 176 S.E. 2d 732. "The court (trial) charged the jury to return a verdict: (1) guilty of rape; (2) guilty of rape with a recommendation that punishment be imprisonment for life in the State's prison; or (3) not guilty. Failure to find the defendant guilty of (1) or (2) required a verdict of not guilty. The defendant was not prejudiced by the charge which required the jury to acquit of all included lesser offenses. There was no evidence of the lesser included offenses, and the court was correct in refusing to permit the jury to consider them. (Citing authorities.)"

*State v. Carnes,* 279 N.C. 549, 184 S.E. 2d 235, states the rule: "The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The presence of such evidence is the determinative factor."

*State v. Murry,* 277 N.C. 197, 176 S.E. 2d 738, states the rule: "The necessity of instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The presence of such evidence is the determinative factor. (Citing authorities.)"

*State v. Green,* 246 N.C. 717, 100 S.E. 2d 52, is not in point. The indictment charged "the felony and crime of rape upon a 16-year-old female child by a male person over 18 years of age." Upon arraignment the solicitor announced: "The State will not ask for a verdict of guilty of the capital crime carrying the death penalty, but will ask for a verdict of guilty of rape, with the recommendation of life imprisonment or guilty of attempt to commit rape, as the facts and law may justify."

In the case of *State v. Smith,* 201 N.C. 494, 160 S.E. 577, the defendant was indicted for first degree burglary and rape.

The court said: "According to her (prosecutrix) testimony, which contains a full recital of the crime, the prisoner was guilty of rape; according to his own evidence he was guilty of no offense. There is no aspect of the case that would justify a verdict merely of a simple assault or an assault with intent, and refusal to instruct the jury in reference to the lesser offense did not constitute reversible error. *S. v. White,* 138 N.C. 704; *S. v. Kendall,* 143 N.C. 659."

In *State v. Lance,* 166 N.C. 411, 81 S.E. 1092, the defendant was tried for rape. "It has been repeatedly held that the judge upon a proper state of facts can tell the jury that if they believe the evidence they can find the prisoner guilty of murder or nothing. It would have been no error to have so charged on this occasion." (Rape instead of murder.) In *State v. Williams,* 185 N.C. 685, 116 S.E. 736, the Court labored long and hard to get around *State v. Lance, supra,* to hold assault should have been submitted. In *Williams* the Court stated the evidence of the prosecutrix at great length, emphasizing its inconsistencies to her discredit, and concluded: "Her conduct was not by any means, that of an outraged woman, and certainly not of a chaste or virtuous woman, but she acted in a perfectly natural and normal way of a lewd and lascivious female. . . . We recite this much of the testimony to show how carefully judges should charge juries in such cases, so that they may subject the testimony to close examination and scrutiny, as the accusation is one very easy to make and very hard for the man to rebut, or overcome." The court ordered a new trial for failure to submit assault with intent " . . . (T)o the end that justice may be administered . . . ."

The decision in *Williams* appears to be out of line with the other well-considered cases which require supporting evidence in order to justify submission of any lesser included offenses. In *State v. Miller,* 268 N.C. 532, 151 S.E. 2d 47, the indictment charged rape. The court submitted five possible verdicts. The jury found guilty on No. 3—assault with intent. On the defendant's appeal this Court found no error prejudicial to him in the trial. The State of course could not appeal. This Court affirmed the judgment on the theory discussed by this Court in *State v. Bentley,* 223 N.C. 563, 27 S.E. 2d 738.

"If we are to understand the appellant to base his demand for discharge merely on the fact that the jury by

State v. Bryant

an act of grace has found him guilty of a minor offense, of which there is no evidence, instead of the more serious offense charged, this is to look a gift horse in the mouth; more especially, since the conclusion that there is no evidence must be reached by conceding that all the evidence, including the admission of the defendant, points to a graver crime. Such verdicts occur now and then, despite the efforts of the courts to discourage them. When they do, although illogical or even incongruous, since they are favorable to the accused, it is settled law that they will not be disturbed. (Citing numerous cases.)"

\* \* \* \* \* \* \* \* \*

" . . . (T)he judge must confine himself to the *evidence* in giving his instructions to the jury: 'He shall state in a plain and correct manner the evidence given in the case and declare and explain the law rising thereon.' Instruction under the statute is the law geared to the facts. In informing the jury as to their duty, we have never held that it is incumbent on the court, under this statute, to go beyond the evidence or advise the jury that they may ignore its absence and find the accused guilty of a minor offense, which could only be reached by the process of arbitration."

The defendant's objection to the court's failure to submit assault with intent or assault on a female is not sustained. The court's instruction in this case harmonizes with the well established rule that in order to submit a lesser included offense there must be evidence of that lesser offense. "The presence of such evidence is the determinative factor." *State v. Carnes, supra.*

The defendant's other objections, not herein referred to, have been examined and have been found to be free from legal objection. Hence, in this trial, verdict, and judgment we find

No error.

Chief Justice BOBBITT dissenting.

In my opinion, defendant is entitled to a new trial because of the court's refusal to submit assault with intent to commit rape as a permissible verdict.

An indictment for rape includes an assault with intent to commit rape. *State v. Birckhead,* 256 N.C. 494, 499, 124 S.E.

2d 838, 843 (1962). "The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The *presence of such evidence* is the determinative factor." *State v. Hicks,* 241 N.C. 156, 159, 84 S.E. 2d 545, 547 (1954); *State v. Carnes,* 279 N.C. 549, 554, 184 S.E. 2d 235, 238 (1971), and cases cited.

Where the State's evidence, if believed in its entirety, tends to establish all elements of the crime of rape, and the defendant, while admitting he had sexual intercourse with the prosecutrix, testifies it was with her consent, is the court required to submit assault with intent to commit rape as a permissible verdict? This question was fully considered in *State v. Williams,* 185 N.C. 685, 116 S.E. 736 (1923), and answered, "Yes." In *Williams,* it was held that the defendant was entitled to a new trial on account of the court's failure to so instruct the jury and that the verdict of guilty of rape did not cure the error.

In *State v. Green,* 246 N.C. 717, 100 S.E. 2d 52 (1957), the State's evidence tended to show the defendant, a married man, raped the prosecutrix, a sixteen-year-old girl. The defendant, while admitting he had sexual intercourse with the prosecutrix, testified it was with her consent. The defendant was convicted of an assault with intent to commit rape and this Court found "No error." Justice (later Chief Justice) Parker, speaking for the Court, said: "It would have been error for the court not to have charged the jury on the lesser offenses, as it did. *S. v. Williams,* 185 N.C. 685, 116 S.E. 736."

The consent of the prosecutrix when the act of sexual intercourse takes place is a defense to the charge of rape. However, this would not preclude a finding that, earlier in their relationship, the defendant had assaulted the prosecutrix with the intent to gratify his passion on her person notwithstanding any resistance she might make. The jurors are the sole judges of the credibility of the witnesses; they may believe all, or a part, or none of what a witness has testified. When there is conflicting evidence as to what occurred between the prosecutrix and the defendant, it is proper and customary for the trial judge to so instruct the jury; and in such case it is required that the lesser included offense of assault with intent to commit rape be submitted.

State v. Bryant

Decisions in which the rule stated in the preceding paragraph has been applied include *State v. Kiziah,* 217 N.C. 399, 8 S.E. 2d 474 (1940); *State v. Shull,* 268 N.C. 209, 150 S.E. 2d 212 (1966); *State v. Miller,* 268 N.C. 532, 151 S.E. 2d 47 (1966). In each, the prosecutrix testified the defendant had sexual intercourse with her by force and against her will; the defendant testified he had sexual intercourse with the prosecutrix with her consent.

In *Kiziah,* the defendant was indicted for rape. He was placed on trial for assault with intent to commit rape. The jury returned a verdict of guilty of assault on a female.

In *Shull,* the defendant was indicted for rape. He was placed on trial for assault with intent to commit rape or assault on a female as the evidence might warrant. The defendant was convicted of an assault with intent to commit rape.

In *Miller,* each of the five defendants was indicted for rape and placed on trial for rape. Each was convicted of assault with intent to commit rape. On appeal, the defendants assigned as error, *inter alia,* "that the court instructed the jury on assault with intent to commit rape when there was no evidence of an assault to commit rape." The following are excerpts from the opinion of Justice Higgins:

(A) "The critical issue in this case is whether the acts of intercourse (which the witness and all defendants admitted) were by force and against the will of Ribbie Parham as she testified, or with her consent as each of the defendants testified. The jury heard the witnesses and observed their demeanor, and returned verdicts 'guilty of assault with intent to commit rape.' " (B) "The court instructed the jury to consider five possible verdicts: (1) rape; (2) rape with a recommendation that punishment should be imprisonment for life; (3) assault with intent to commit rape; (4) assault on a female; (5) not guilty." (C) "The court gave clear and explicit instructions as to the rules of law applicable to the facts as the jury might find them to be from the evidence. The charge was correct."

The present case is distinguishable, as were *Williams* and *Green,* from cases in which the *uncontradicted* evidence shows the crime of rape was committed, *e.g., State v. Jackson,* 199 N.C. 321, 154 S.E. 402 (1930), where the defendant's evidence related solely to an alibi; *State v. Brown,* 227 N.C. 383, 42

S.E. 2d 402 (1947), where the defendant's evidence related solely to his plea of insanity; *State v. Jones,* 249 N.C. 134, 105 S.E. 2d 513 (1958), where the defendant offered no evidence.

The majority opinion cites as authority for the court's refusal to submit assault with intent to commit rape our decisions in *State v. Carter,* 265 N.C. 626, 144 S.E. 2d 826 (1965) ; *State v. Primes,* 275 N.C. 61, 165 S.E. 2d 225 (1969) ; *State v. McNeil,* 277 N.C. 162, 176 S.E. 2d 732 (1970) ; *State v. Murry,* 277 N.C. 197, 176 S.E. 2d 738 (1970) ; *State v. Smith,* 201 N.C. 494, 160 S.E. 577 (1931) ; and *State v. Lance,* 166 N.C. 411, 81 S.E. 1092 (1914). In each, the defendant was convicted of rape; and in all except *Primes* and *Lance* the testimony of the prosecutrix as to what occurred was *uncontradicted.*

In *Carter,* where the prosecutrix was a nine-year-old girl, the defendant testified he was in no way involved and offered alibi evidence.

In *Primes,* the defendant took the stand and testified he had sexual intercourse with the prosecutrix with her consent. The jury was instructed to say by their verdict whether they found the defendant "guilty of rape as charged in the bill of indictment; guilty of rape, with recommendation that his punishment be imprisonment for life in the State's prison; guilty of an assault with intent to commit rape; or guilty of an assault upon a female, he being a male person above the age of eighteen years; or not guilty."

In *McNeil,* the defendant did not testify or offer evidence.

In *Murry,* where the prosecutrix was an eleven-year-old girl, the defendant testified he was in no way involved and offered alibi evidence.

In *Smith,* there was no evidence in contradiction of the prosecutrix's testimony except the defendant's alibi.

In *Lance,* the defendant requested the court to charge that the jury might return any one of these verdicts: (1) guilty of rape; (2) guilty of assault with intent to commit rape; (3) guilty of assault with a deadly weapon; (4) guilty of simple assault; or (5) not guilty. The judge refused to submit whether the defendant was guilty of an assault with a deadly weapon or whether he was guilty of simple assault. He instructed the jury it might return any one of these verdicts: (1) guilty of rape;

(2) guilty of assault with intent to commit rape; (3) guilty of an assault on a female by a male person above the age of eighteen years; or (4) not guilty. In a split decision (3 to 2), this Court approved the instructions given by the trial judge. Speaking for the majority, Chief Justice Clark specifically approved the following instruction: " 'If the jury under the law and the evidence should find the prisoner guilty of rape, as charged, they will not consider or pass upon the question of his guilt of any lesser offense. But if they should not find him guilty of rape, then the jury will consider the question whether or not he be guilty of an assault with intent to commit rape,' etc." 166 N.C. at 414, 81 S.E. at 1093. Speaking for the minority, Justice (later Chief Justice) Hoke dissented on the ground that under the evidence the defendant was entitled to have submitted whether he was guilty of an assault with a deadly weapon or of a simple assault.

In *State v. Bentley*, 223 N.C. 563, 27 S.E. 2d 738 (1943), the court did not submit whether the defendant was guilty of an assault with a deadly weapon; the jury returned the verdict of guilty of an assault with a deadly weapon on its own initiative and in the absence of any instruction that this was a permissible verdict.

Justice SHARP joins in this dissenting opinion.