STATE OF NORTH CAROLINA v. SPIKE WILSON

No. 7222SC386

(Filed 24 May 1972)

1. **Criminal Law § 73; Homicide § 15— statements by deceased — res gestae**

   Testimony by a State's witness in a homicide prosecution that immediately before she heard a shot, she heard the deceased state, "Spike, don't shoot me. I ain't done nothing to you," *held* competent as part of the *res gestae*.

2. **Criminal Law § 75— Miranda warnings — defendant not in custody**

   Statements made by defendant to an officer at the scene of a homicide were admissible even though defendant had not been given the *Miranda* warnings, where defendant was not in custody and was not even suspected of having committed a crime when the statements were made.

3. **Criminal Law § 75— Miranda warnings — statements used for impeachment**

   Statements made by defendant to a police officer were admissible for the purpose of impeaching defendant's trial testimony even though defendant was not given the *Miranda* warnings before the statements were made.

**4. Criminal Law § 42; Homicide § 20— rifle found seven to eight hours after crime — remoteness**

In this homicide prosecution, a rifle found behind the apartment where deceased was killed some seven or eight hours after the crime occurred was not inadmissible on the ground of remoteness, defendant having admitted that he had flung the rifle in the backyard of the apartment.

APPEAL by defendant from *Lupton, Judge,* 1 November 1971 Session, DAVIDSON County Superior Court.

The defendant was indicted at the 9 August 1971 Criminal Session of Superior Court for first-degree murder of Shirley Smith. The death occurred 3 July 1971. Upon defendant's arraignment, the Solicitor, on behalf of the State, announced that the State would not try the defendant for the capital felony of murder but instead would try him for the crime of murder in the second degree or whatever verdict the evidence in the case might warrant. The defendant entered a plea of not guilty to this charge.

The evidence on behalf of the State was susceptible of a finding that on 2 July 1971 the defendant and the deceased, Shirley Smith, a thirty-one-year-old woman, were living together in Apartment No. 9 on Parker Street in Lexington. The step-mother of Shirley, Mrs. Brent Smith, lived next door in Apartment No. 8. About 10:30 p.m. on that night Mrs. Brent Smith was sitting in her yard. She observed the defendant, in the vicinity of a nearby apartment, beating Shirley, hitting and kicking her. He brought Shirley to their Apartment No. 9 and said, "Shirley, I am tired of fooling with you. I am going to fix you tonight. Get on in this house. You have been in the street all evening." Mrs. Brent Smith further testified that she observed the defendant hit and kick Shirley into the apartment. About five minutes after the defendant and Shirley entered the apartment, she testified that she heard Shirley holler, "Spike, don't shoot me. I ain't done nothing to you—don't shoot me, I ain't done nothing to you!" At that time she testified that she heard a shot go off and observed through the window the defendant walk in the front room from the kitchen area and sit down in a chair. He sat there for about five minutes and went back towards the kitchen. She later saw the defendant come out of the apartment, and go down the street to her daughter's house. The defendant then returned to his apart-

ment and came back out with a rifle and went around to the back of the apartment carrying the rifle. He returned without the rifle and in a very short while the ambulance arrived. Mrs. Smith further testified that she went to Winston-Salem to the hospital where Shirley died the next evening. She testified that Shirley's eyes were swollen as big as her fist and were black as soot. Shirley was shot in the middle of the forehead. It was stipulated that Shirley died as a result of a .22 bullet wound through the forehead.

Police Officer Wheless testified that he went to Apartment No. 9 on Parker Street arriving about 10:35 p.m. after receiving a radio notification of a shooting at that location. He found a two-room apartment with a living room in front and a kitchen behind the living room. When he arrived, there were four people in the apartment—the defendant, Shirley and two ambulance attendants. The ambulance attendants were bringing Shirley from the kitchen area and placing her on a stretcher in the front room. There was a wound in the center of her forehead between her eyes. Her eyes were bulging and she was breathing rather heavily at the time.

The officer asked the defendant what had happened. Upon objection by the defendant to any statement made by the defendant to the officer, the trial judge conducted a voir dire, but after the voir dire reserved his ruling on the admissibility of the statement.

The defendant testified in his own behalf and claimed that the deceased was making an attack upon him with a bread knife when he picked up the rifle to defend himself and prevent himself from being stabbed by the deceased. He stated that he did not intend to shoot the deceased and that the rifle fired accidentally and at a time when he was trying to prevent himself from being stabbed. The defendant further testified that after the shot was fired he went down the street to have an ambulance called. He was unsuccessful, so he returned, got in his automobile and went to a neighborhood store where he called the ambulance. He then returned to his apartment, took the rifle and went out into the backyard where he flung the rifle away. After flinging the rifle away, he returned to his apartment. The ambulance and the police officers arrived. That night he denied to the police officers that he had shot the deceased and told them she must have been shot from outside and that he had

come to the apartment and found her lying on the floor. He stated that he was not telling the truth that night but that the next day he did make a truthful statement. He further testified that the rifle which was exhibited to him at the police department was his rifle and he knew there had been a bullet in it when he picked it up.

*Attorney General Robert Morgan by Assistant Attorney General Rafford E. Jones for the State.*

*Robert C. Hedrick for defendant appellant.*

CAMPBELL, Judge.

[1]	The first assignment of error presented by the defendant is that it was error to permit the testimony of Mrs. Brent Smith that she heard the deceased state, "Spike, don't shoot me. I ain't done nothing to you—don't shoot me. . . ." immediately before she heard a shot. We think this evidence was competent as part of the *res gestae. State v. Spivey,* 151 N.C. 676, 65 S.E. 995 (1909); Stansbury, N. C. Evidence, 2d Ed., § 164; 3 Strong, N. C. Index 2d, Evidence, § 35.

[2, 3]	The defendant's second assignment of error pertains to the testimony of Police Officer Wheless as to what the defendant told him on the night of the shooting when Officer Wheless first arrived at the apartment. There is no merit in this assignment of error for that the statement does not come within the *Miranda* doctrine *(Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966)) as contended by the defendant. The statement was made by the defendant to Officer Wheless at a time when the defendant was not in custody and was not even suspected of having committed a crime. It was a part of the on-scene investigation, and this was clearly brought out on the voir dire examination. Furthermore, this statement was not admitted in evidence at that time, and the Court reserved its ruling on the admissibility thereof. After the defendant went on the witness stand and testified in his own behalf and admitted that he had made a statement to Officer Wheless on the night of the shooting, which was an incorrect and untruthful statement, Officer Wheless was recalled, and his testimony as to what the defendant told him on the night of the shooting was introduced in evidence in rebuttal. This evidence was competent even if the statement had been taken in an in-custodial

situation (which it was not) as a prior inconsistent statement on the question of credibility. *State v. Bryant,* 280 N.C. 551, 187 S.E. 2d 111 (1972).

[4] The defendant in his third assignment of error asserts that the rifle was improperly admitted into evidence as an exhibit. The defendant asserts that the rifle was not found until the next day, which was some seven or eight hours after the shooting, and that this was entirely too remote. This assignment of error is without merit for that the defendant himself admitted that he flung the rifle into the backyard. A rifle was found in the backyard the next day some seven or eight hours after the shooting. The rifle was exhibited to the defendant at the police station and he testified that the rifle which he saw at the police station was his rifle and the one he had used. While he denied the rifle admitted in evidence at the trial was the same rifle, he did state that his rifle was similar to it, and the officers on behalf of the State testified that it was the same rifle they had found in the backyard. This evidence was competent.

The remaining assignments of error have all been considered, and we find them to be without merit.

There was ample evidence of the defendant's guilt to go to the jury. The jury found the facts against the defendant after instructions from the trial judge, to which instructions no exception has been taken.

The defendant had a fair trial, and we find

No error.

Chief Judge MALLARD and Judge BROCK concur.