STATE OF NORTH CAROLINA v. BEVERLY RAY GILLESPIE

No. 7718SC207

(Filed 20 July 1977)

1. **Bills of Discovery § 6— evidence not subject to discovery — failure to follow proper discovery procedures**

    The trial court did not err in refusing to grant defendant's motion for discovery of internal police reports and memoranda pertaining to the case, statements by witnesses other than defendant, and the criminal records of witnesses other than defendant, since such evidence was not made discoverable by the Criminal Procedure Act, and defendant failed to follow the mandatory procedure of G.S. 15A-902(a) in that he failed to lodge a written request for discovery with the district attorney prior to filing his discovery motion with the court.

2. **Criminal Law § 114.2— jury instructions — summary of evidence — no expression of opinion**

    The trial court in a homicide prosecution did not violate G.S. 1-180 when he instructed the jury that "there is evidence which tends to show that the defendant confessed that he committed the crime charged," where there was in fact some evidence tending to show a confession.

3. **Criminal Law § 75.12— statement admissible for impeachment only — error in admission not prejudicial**

    The trial court in a homicide prosecution erred in failing to instruct the jury that defendant's recorded statement to the police, made without an express waiver of the right to counsel, was admissible only for the purpose of impeaching his testimony at trial; however, defendant was not prejudiced by such error, since the recorded statement was generally consistent with defendant's in-court testimony and it was almost entirely exculpatory.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 21 October 1976 in Superior Court, GUILFORD County. Heard in the Court of Appeals 29 June 1977.

On 13 February 1976 defendant, Gillespie, shot and killed Ronald Lee Norman, the estranged husband of the defendant's

girl friend, Judy Norman. All the evidence tended to show that both defendant and Norman were dangerous men with previous convictions for violent crimes, and that Norman had threatened "to get" Gillespie. On the night of the shooting, Norman came to Gillespie's home, entered, shouted at his wife who was living with Gillespie, and then left, slamming the door and saying, "I'll get you [Gillespie], you son of a bitch; I'll get you." A few minutes later Gillespie and Judy Norman also left; Gillespie was carrying a handgun. When they reached the public drive next to Gillespie's apartment, Ronald Lee Norman drove his car at them at a high speed. Norman stopped the car beside Gillespie with a squeal of tires. Gillespie drew the gun out of his pocket and held it by his side. He and Norman exchanged words. According to Gillespie, Norman then leaned over to his right as if to reach the glove compartment. Gillespie testified that he believed Norman was reaching for a weapon, that he raised his gun and that it accidentally discharged, shooting Norman in the arm. The bullet passed through the flesh of Norman's arm, entered his chest and severed his aorta. He quickly bled to death.

Other relevant evidence tended to show that Tammy Wilson, Judy Norman's niece, lived near Gillespie. She testified that she saw Norman and heard him threaten Gillespie just before the shooting. She heard the squealing tires and the gunshot. Very shortly thereafter the defendant Gillespie came into Tammy Wilson's home and said, "That son of a bitch thought I wouldn't shoot him."

Evidence also showed that Gillespie gave a statement to the police between 3:00 and 4:00 a.m. on 14 February 1976. The statement was made in response to police questions. The trial court found that it was a voluntary statement. However, the defendant did not—either orally or in writing—expressly waive his right to counsel prior to making his statement to the police. The entire statement was placed in evidence by the State as rebuttal evidence after the defendant had testified in his own behalf. In his statement, Gillespie said, among other things:

> ". . . And [Norman] started running his mouth. 'I'm going to kill you. I'm going to kill you.' And I said, 'Ronnie, there ain't no need in all this. . . . ' I said, 'I can kill you right now.' He said, 'Well, go ahead.' And he reached over like

that, and when he did, I thought he was reaching for a gun.

"Q. How many times did you shoot him?

"A. I didn't never shoot him. The gun went off accidentally. He scared me.

. . . .

"Q. After the gun went off what did you do then?

"A. I started crying and I hollered, 'Call an ambulance.' Don't ask me what I done, come on, please.

. . . .

"Q. . . . you say that Ronald told you to go ahead and kill him?

"A. Ronald told me . . . .

. . . .

"A. The gun actually went off accidentally. Did you know that when — that I stuck that gun up there and it went off, I was so God damned shocked, the only thing I knew to do was run.

. . . .

"A. Yeah. You want me to tell you something—when that gun went off it surprised me as much as any, and that's the God's truth. If I knew that when he was in that house, that I could have pulled that trigger on him, you think I'm going to walk out there in that yard and shoot him? I'm that big a fool? I didn't know the gun would go off. It surprised me. I thought the safety was on that gun. The son of a bitch fired."

Another rebuttal witness, Craig Amele Thomas, testified for the State. Thomas said that he heard the gunshot and thereafter a woman's voice cried, "Oh, God, don't shoot him again," and a man replied, "I'll God damn well shoot him if I want to." The witness did not see the speakers.

The case was submitted to the jury with instructions to find the defendant guilty of first degree murder, second degree murder, voluntary manslaughter, or involuntary manslaughter or to find the defendant not guilty. The jury convicted the defendant of second degree murder, and judgment was entered accordingly. He appeals.

*Attorney General Edmisten, by Assistant Attorney General Archie W. Anders, for the State.*

*Assistant Public Defender Frederick G. Lind, for defendant appellant.*

ARNOLD, Judge.

[1]  By assignments of error duly brought forth defendant makes twenty-three arguments in this appeal. Assignments of error nos. 2, 3, 5-12 all pertain to rulings on the evidence, and in no instance was there prejudicial error. Assignments of error nos. 13-16, 19-22 pertain to the court's instructions which we also find to be correct. In assignment of error no. 1 the defendant objects to the court's refusal to grant his motion for discovery of certain evidence, to wit: internal police reports and memoranda pertaining to the case, statements by witnesses other than the defendant and the criminal records of witnesses other than the defendant. This evidence is not made discoverable by the Criminal Procedure Act. G.S. 15A-903. Therefore, discovery of this material is not compelled under the Act. G.S. 15A-904(a). Moreover, defendant failed to lodge a written request for discovery with the district attorney prior to filing his discovery motion with the court. Thus he failed to follow the mandatory procedure of G.S. 15A-902(a). Finally, we have considered the defendant's argument that the U. S. Supreme Court decisions of *Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed. 2d 737 (1967), and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963), require reversal of his conviction for failure to grant his discovery motion. Because nothing in the record shows that the State *suppressed material evidence, Giles* and *Brady* are inapposite. They do not require a new trial. *State v. Branch,* 288 N.C. 514, 220 S.E. 2d 495 (1975); *State v. Gaines,* 283 N.C. 33, 194 S.E. 2d 839 (1973).

Defendant also made timely motions for a nonsuit and judgment n.o.v. Plenary evidence supports his conviction. Therefore, these motions were properly denied, and assignments of error nos. 4 and 23 have no merit.

[2]  We disagree with defendant's argument that the trial judge expressed an opinion and violated G.S. 1-180 in the following portion of his instructions to the jury:

"Also, there is evidence which tends to show that the defendant confessed that he committed the crime charged. If you find that the defendant made the confession then you consider all of the circumstances under which it was made in determining whether it was a truthful confession and the weight you will give to it."

The jury was not instructed that defendant had confessed to the crime charged, first degree murder. They were instructed that there was some evidence tending to show such a confession, and, in fact, there was some evidence tending to show a confession. Defendant's statement, for example, to Tammy Wilson, "The son of a bitch thought I wouldn't shoot him," was some evidence. There is no reason, however, to think that the jury attached any importance to the words "confessed that he committed the crime charged" since they only found defendant guilty of the lesser offense of second degree murder.

[3] In his final assignment of error defendant argues that the court erred in instructing the jury about the purposes for which it could consider his recorded statement to the police. Because the defendant did not expressly waive his right to counsel prior to the questioning, his recorded statement was admissible only for the purpose of impeaching his testimony at the trial. *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed. 2d 1 (1971); *State v. Huntley*, 284 N.C. 148, 200 S.E. 2d 21 (1973); *State v. Bryant*, 280 N.C. 551, 187 S.E. 2d 111 (1972).

Nowhere in the judge's charge to the jury did he instruct the jurors that they could only consider the defendant's recorded statement for the purpose of judging the credibility of his testimony during the trial. In fact the portion of the charge quoted above alludes to the statement and appears to treat it as substantive evidence.

We have carefully reviewed all of the evidence in the record, and we conclude that even though the court erred in failing to limit the use of defendant's recorded statement to the purpose of impeachment, it was harmless error. Defendant's recorded statement was generally consistent with his in-court testimony, and it was almost entirely exculpatory. Only once in the recorded statement did defendant say anything which might indicate that he shot Ronald Lee Norman deliberately,

premeditatedly, with malice and with the specific intent to kill. That is when he stated:

" . . . And I said, 'Ronnie, there ain't no need in all this. . . . ' I said, 'I can kill you right now.' He said, 'Well go ahead.' . . . . "

The effect of this statement, which is more of a statement of capacity than a threat, is entirely overshadowed by the testimony of Tammy Wilson ("That son of a bitch thought I wouldn't shoot him."), Craig Amele Thomas ('I'll God damn well shoot him if I want to.") and the circumstantial evidence of the shooting. We are certain beyond a reasonable doubt that the possible consideration by the jury of the defendant's recorded statement as substantive evidence did not contribute to his conviction of second degree murder. Because the use of the recorded statement was harmless beyond a reasonable doubt, there was no prejudicial error in defendant's trial. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967).

No error.

Judges BRITT and VAUGHN concur.