STATE OF NORTH CAROLINA v. PAUL LESTER BYNUM
— AND —
STATE OF NORTH CAROLINA v. JOLLIE COLEY

No. 60

(Filed 26 January 1973)

1. Criminal Law § 115— rape and kidnapping — failure to charge on lesser degrees of crimes — no error

The trial court did not err in failing to charge on lesser included offenses in a rape and kidnapping case where there was no evidence of any lesser included offenses embraced within the indictments.

2. **Constitutional Law § 36; Criminal Law § 135— sentence of life imprisonment imposed — standing to object to statutory provision for death sentence**

Where the jury recommended and the court imposed life imprisonment sentences upon defendants in a rape and kidnapping case, defendants were without standing to challenge the validity of a death sentence provided by statute.

3. **Criminal Law § 101— refusal to sequester jury — no error**

The trial court did not abuse its discretion in allowing the jurors to return to their homes for the night before they had reached a verdict where the court had given the jurors detailed admonitions and cautions and where there was nothing suggesting any impropriety on the part of any juror.

Chief Justice BOBBITT dissenting.

Justice SHARP joins in the dissenting opinion.

APPEAL by defendants from *Fountain, J.,* May 1, 1972 Session, WILSON Superior Court.

The defendants, Paul Lester Bynum and Jollie Coley, were separately charged by bills of indictment with the felonies of rape and kidnapping. The alleged victim of the charges was Phyllis D. Adams, a white female, age eighteen years. The four indictments, which grew out of a single episode, were consolidated for trial.

The record discloses that upon a finding of indigency on March 14, 1972, Judge Neville appointed Allen G. Thomas attorney for the defendant Bynum. On May 29, 1972, Judge Fountain appointed Samuel Mitchell attorney for Bynum. Mitchell, originally employed by Coley and later by Bynum, appeared as trial counsel for both defendants.

After arraignment and pleas of not guilty, a jury, satisfactory to both parties, was selected and duly empaneled.

Miss Adams, a witness for the State, testified that on March 11, 1972, she, in the company of two friends, went from their homes in Wake County to the airport in Wilson County for the purpose of viewing and, perhaps, participating in a parachute drop, or exhibition. Just at dark she left the airport alone to take a short walk along the nearby highway. Her mother testified that when her daughter was disturbed, she frequently walked alone "to meditate." As she returned from her walk, the following occurred: "(T)wo men (later identified

as the defendants) pulled up to the side of the road and asked me if I wanted a ride. They were in a Red Chevrolet. I refused and kept walking, and they backed up and asked again. . . . After my refusal to ride, they backed up again and the one on the passenger's side got out. . . . The one that got out grabbed my arm and pushed me in the car." Bynum was under the wheel. The witness was forced to sit between them. The two defendants drove to a lonely spot on a side road where first Coley and then Bynum, by the threatened use of an open knife, forced the witness to have intercourse with them. Thereafter she was taken back to the main highway and released on the outskirts of town. She went to the nearby home of Mr. and Mrs. Jennings and had them call the officers to whom she reported what had happened.

Mrs. Jennings, quoting Miss Adams, testified: "(S)he had been forced into a car with two colored men at knife point." Mrs. Jennings testified that Miss Adams was very much excited and in a state of shock.

Both defendants testified they were driving on the road together in Coley's Chevrolet; that Miss Adams was standing on the side of the road "thumbing a ride." They stopped and she voluntarily entered the car. After she smoked a marijuana cigarette, both had intercourse with her with her consent. Each of the defendants testified he did not use nor possess a knife. They introduced witnesses who testified to their good character.

The jury returned these verdicts: On the charges of rape— guilty with the recommendation the punishment be imprisonment for life in the State's prison. On the charges of kidnapping —guilty. The court imposed prison sentences for life on each defendant in each case. The defendants' counsel, Mr. Mitchell, gave notice of appeal.

Subsequent developments are disclosed by this Court's order here quoted in full:

"SUPREME COURT OF NORTH CAROLINA — ORDER IN CONFERENCE (Filed October 19, 1972)

"The record now before the Court discloses that the above named defendants were indicted, tried, and convicted in the Superior Court of Wilson County at its May 1, 1972 Session on charges of rape and kidnapping. On the charges

of rape the jury recommended and the court imposed life imprisonment sentences. On the charges of kidnapping the court likewise imposed life imprisonment sentences.

"The defendants were represented at the trial by their privately employed attorney, Mr. Samuel S. Mitchell. Mr. Mitchell took proper exceptions and gave notice of appeal.

"On August 4, 1972, the defendants filed in the Superior Court of Wilson County a verified motion alleging they were dissatisfied with their privately employed counsel and desired that he be replaced by other counsel selected by them. Mr. Mitchell replied to the motion saying he had aptly represented the defendants at the trial, he had given the proper notice of appeal, and that he would share his records with other privately employed counsel.

"On August 28, 1972, Judge Perry Martin heard the motion in the Superior Court of Wilson County, found the defendants had not shown cause to require that Mr. Mitchell be displaced as counsel, ordered him to perfect the appeal and 'plead the case on appeal,' but that defendants ' . . . (M)ay associate any counsel of their own choosing . . . to appear with Mr. Mitchell, and Mr. Mitchell is instructed to give such associate counsel . . . the benefit of all records and data available . . . . ' The court refused to relieve Mr. Mitchell of the duty of preparing and arguing the case on appeal.

"Mr. Mitchell complied with the court's order, prepared and filed a proper record of the case on appeal and therewith a well documented brief. The case was scheduled for argument in the Supreme Court on October 10, 1972. On the morning of that day, Mr. Mitchell notified the Clerk that he was ill and unable to appear in person and requested that oral argument be waived and the appeal be heard on the briefs. The Attorney General consented to the requested waiver of the arguments.

"On October 12, 1972, the defendants filed in the Appellate Division what purports to be a notice of appeal from Judge Martin's order directing Mr. Mitchell to appear and argue the case in the Supreme Court. It appears from the record that Mr. Mitchell has complied with Judge Martin's order in all respects except the argument in this Court.

"Under the circumstances here disclosed, it appears Mr. Mitchell is entitled to be relieved of the duty to proceed further in the appellate review. However, on account of the gravity of the charges, the verdicts, and judgments, it is ordered that the cases be re-scheduled and set for argument at the December, 1972 Session of this Court and that counsel selected by the defendants (if qualified to practice in the Supreme Court) appear and argue the case. They will be permitted to file supplemental briefs not later than November 5, 1972. The Attorney General may file a reply brief not later than November 20, 1972.

"By order of the Court in conference this October 19th, 1972.

MOORE, J.

For the Court"

The defendants failed to secure the services of other counsel. However, they filed a self-prepared supplemental brief which was made a part of the record and considered by the Court before final decision on the appeal.

*Robert Morgan, Attorney General by Burley B. Mitchell, Jr., Assistant Attorney General; Charles A. Lloyd, Assistant Attorney General for the State.*

*Samuel S. Mitchell for defendant appellants.*

HIGGINS, Justice.

The defendants' original brief, by exceptions and assignments of error, presents these questions for review:

"1. Did the Court below err in refusing to grant defendants' motions for nonsuit?

"2. Did the Court below err in its charge to the jury on the element of force in kidnapping?

"3. Did the Court below err by not instructing the jury on lesser crimes included under a rape indictment?

"4. Did the Court below err by putting defendants on trial for a capital offense?

"5. Did the Court below err by abusing its discretion in not sequestering the jury?"

The defendants' supplemental brief lists the following as questions involved:

"1.  Did the Court err by an unauthorized search and seizures without a warrant?

"2.  Did the Court err by using a coerced confession without a signature, and not letting the defendants challenge it?

"3.  Did the Court err by Double Jeopardy?

"4.  Did the Court err by not recording the Solicitor arguments to the jury so the defendants could challenge it?

"5.  Did the Court err by not having a doctor report?

"6.  Did the Court err by not looking upon that Miss Adams was thumbling (sic) and smoking marijuana the night we came in touch or contact with her?"

Miss Adams testified she was forced into the automobile, driven to a secluded spot on a side road, and forced to submit to an act of intercourse by each defendant. Immediately after her release she entered the home of strangers in a state of shock and had the officers called. The defendants testified as witnesses in their own defense. Both admitted they picked up Miss Adams, whom they did not know, because she was thumbing a ride. They drove to a side road where both had intercourse with her. Both claimed that all acts were with her consent.

[1] The material factual disputes involved the issue whether the intercourse was voluntary or the result of force. The conflict in the testimony required its resolution by the jury. The jury chose to believe the victim. The court placed upon the State the burden of proving beyond a reasonable doubt all essential elements of the offenses charged and instructed the jury the failure of the State to carry the burden required a verdict of not guilty. There was no evidence of any included lesser offenses embraced within the indictments and hence the court was under no duty to charge on lesser included offenses.

In *State v. Davis*, 282 N.C. 107, 191 S.E. 2d 664, Justice Moore for this Court, stated the rule: "The necessity for charging on the crime of lesser degree arises only when there is evidence from which the jury could find that a crime of lesser degree was committed. (Citing authorities.)"

The Court in *State v. McNeil,* 277 N.C. 162, 176 S.E. 2d 732, said: "The defendant was not prejudiced by the charge which required the jury to acquit of all included lesser offenses. There was no evidence of the included lesser offenses, and the court was correct in refusing to permit the jury to consider them." The same language was repeated in *State v. Bryant,* 280 N.C. 551, 187 S.E. 2d 111. (Certiorari denied by the Supreme Court of the United States, No. 71-6743, decided November 6, 1972.)

[2]    The defendants were placed on trial for kidnapping, a felony, and for rape, designated by G.S. 14-21 as a capital felony with provision that if the trial jury should so recommend, the punishment should be imprisonment for life in the State's prison. The jury recommended and the court imposed the life imprisonment sentences. The defendants, therefore, are without standing to challenge the validity of a death sentence. Only the party aggrieved by the judgment may appeal. 1 Strong's N. C. Index 2d, Appeal and Error, § 7, p. 123.

[3]    The record discloses that the jury deliberated for about fifty minutes after the completion of the court's charge. The court then recalled the jury to the courtroom, instructed them not to discuss the case among themselves or with any member of their families, or with anyone else, and that they should not read about or listen to any discussion of the case. Attorney Mitchell suggested to the court:

"MR. MITCHELL: Your Honor, before they leave, I was wondering if any security should be taken for the jury during the night.

"THE COURT: I don't know of any reason why it should. Do you have anything to suggest such as any impropriety in any way?

"MR. MITCHELL: No, sir, I am not talking about anything that has already happened. I'm thinking about the security that the court usually takes. . . . Not that it has happened, Your Honor."

The court, after detailed admonition and cautions, permitted the jury, composed of three women and nine men, to return to their homes for the night. The jury returned next morning and after deliberation, returned the verdicts heretofore disclosed. The court did not abuse its discretion in permitting the jurors

to return to their homes for the night. Nothing indicates, or even suggests, any impropriety on the part of any juror.

We have examined the entire record and considered all matters properly raised by exceptions and assignments of error. After full consideration of all matters of law or legal inference arising on the record, we are unable to find prejudicial error in any particular.

No error.

Chief Justice BOBBITT dissenting.

For the reasons set forth in my dissenting opinion in *State v. Bryant,* 280 N.C. 551, 187 S.E. 2d 111 (1972), it is my opinion that defendants are entitled to a new trial because of the court's failure to submit guilty of assault with intent to commit rape as permissible verdicts.

Justice SHARP joins in this dissenting opinion.