STATE OF NORTH CAROLINA v. CONNIE LEE ARNOLD

No. 9

(Filed 10 October 1973)

**1. Criminal Law § 99— judge's remarks to solicitor and defense counsel — no expression of opinion**

The trial judge in a rape case did not express an opinion in violation of G.S. 1-180 where his remarks, made for the purposes of insuring an orderly trial and conserving the court's time, were clearly addressed to *both* the Solicitor for the State and defendant's counsel.

**2. Criminal Law § 33— relevancy of evidence**

It is not required that evidence bear directly on the question in issue, and evidence is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known, to properly understand their conduct or motives, or if it reasonably allows the jury to draw an inference as to a disputed fact.

3. **Rape § 4— evidence of prior abduction by defendant — relevancy — admissibility to show common plan**  .

In a rape case where the ultimate issue for the jury was whether the act of intercourse was with the consent of the victim, evidence that defendant picked up another girl earlier on the day of the alleged crime at the same place he picked up his victim, took her along the same route into a rural area, and used the same language to quell her fears, though tending to show that defendant had committed another independent crime and not bearing directly upon the ultimate question before the jury, did tend to disclose a common plan or scheme by defendant to pick up a female and gratify his sexual desires and did tend to shed some light upon the alleged crime and defendant's conduct and motives; therefore, the evidence was relevant and properly admitted by the trial court.

4. **Rape § 4— evidence that defendant was at crime scene — relevancy**

In a rape case testimony by one witness that she saw an automobile like that of defendant's parked at the crime scene several hours before the offense allegedly occurred and saw the driver of the vehicle speak to a girl standing nearby, and testimony by another witness that defendant offered her a ride several hours before the offense allegedly occurred was properly admitted, since the testimony presented circumstances not too remote in time to have probative value which tended to aid the jury in understanding the conduct and motives of the parties.

5. **Rape § 5— sufficiency of evidence**

Evidence in a rape case was sufficient to withstand defendant's motion for nonsuit where it tended to show that defendant offered his victim a ride to her college dormitory, that he took her to a rural area instead where he had intercourse with her, and that the victim resisted defendant but he was physically stronger than she and overpowered her.

6. **Rape § 6— failure to instruct on lesser included offense — no error**

In a rape prosecution where all of the evidence revealed a completed act or completed acts of sexual intercourse and the factual dispute related only to whether the act or acts were by consent or as a result of force or coercion, the trial court did not err in failing to instruct the jury that they might find defendant guilty of a lesser included offense.

7. **Criminal Law § 128— motion to set aside verdict — denial proper**

The trial judge in a rape case did not abuse his discretion in denying defendant's motion to set aside the guilty verdict as being against the greater weight of the evidence.

Chief Justice BOBBITT dissenting.

Justice SHARP joins in the dissenting opinion.

APPEAL by defendant from *Cooper, J.,* 4 December 1972 Session of ORANGE Superior Court.

Defendant was tried upon a bill of indictment, proper in form, charging him with the rape of Sally Campbell. He entered a plea of not guilty.

The State's evidence tends to show that on the night of 7 September 1972 at about 9:30 p.m., Sally Campbell, a student at Duke University, was waiting for a bus near Gilbert-Adams Dormitory on the Duke East Campus. This point was about a mile from her dormitory on the West Campus of Duke University. A brown 1964 Impala Chevrolet pulled over to the curb, and when the driver opened the door, she entered the car. She asked him to take her to West Campus. She had not previously known defendant, but in court she identified him as the operator of the automobile. He did not take her to the West Campus but drove back to and through the East Campus, to Route 70 and into rural Orange County. She asked him several times to turn around, to stop, or to let her out. Defendant replied "I will, I will" and "It won't cost you a dime." Defendant turned off Route 70 near a farm equipment store, and after traveling less than five minutes over bumpy roads, over a small bridge and between two brick pillars, he parked the car in a grassy area which was wooded on three sides. There were no lights in the area. She was crying and pleading with defendant to take her back. He roughly pulled her toward him, pushed her down on the seat, and removed her blue jeans, shoes and underpants. She stated that she attempted to philosophically convince him that he was doing wrong. He removed his own clothes and by force and against her will had sexual intercourse with her three times.

Thereafter, defendant carried her back to her dormitory, and she kissed him good night. She agreed to kiss him because she thought she could thereby more easily get out of the car.

After leaving defendant's car, she went to her room and told her roommate, Linda Davis, what had happened. She talked with Linda and other friends until about 2:00 a.m. On the following day, she went to her regular classes and worked in the library during the afternoon. She saw Dr. Young, at Duke University, at about 5:30 p.m. on that day. She thereafter saw Dr. Nowlin who sent her to the hospital emergency room where she saw Dr. Curry and Dr. Rock. The latter physicians examined her and took vaginal smears. She later talked to officers of the Duke Public Safety Office, and on a subsequent day she accom-

panied officers to the spot where defendant had parked his car.

On cross-examination, Miss Campbell testified that defendant stopped for at least two stop lights, and she could have opened the door and left the car if she had so desired. Before they stopped at the first light, she knew that defendant was not a student and that he had probably been drinking. She stated that prior to the attack she engaged in a philosophical argument with defendant concerning the reasons she did not "want to make love," and that at this time defendant showed that "his will was stronger than hers." She admitted that defendant never threatened to harm her physically or threatened to use any deadly weapon. After the entire incident was concluded, she was without bruises or cuts, and none of her clothes were torn or damaged. She suffered intense pain because she had never had sexual relations with anyone before.

Miss Campbell did not make the appointment to see the Dean or Dr. Nowlin, and she became aware that someone had made these appointments on the afternoon after the attacks. Although she weighed 220 pounds, she was not able to successfully resist defendant.

Linda K. Davis testified that she roomed with Sally Campbell and that Sally returned to their room at about twenty minutes after midnight on 8 September 1972. Shortly after her return, she began to sob and appeared to be hysterical. Two other girls came to their room, and there was a discussion of the medical aspects of possible infection, pregnancy, and of the legal implications regarding the attack. Miss Davis washed Sally Campbell's clothes and did not observe any blood on or damage to the clothes. Miss Davis made the appointment with Dr. Young for Sally Campbell, and Sally appeared to be very upset when she was informed of the appointment.

James P. Summers, Detective Lieutenant with the Duke Public Safety Office, testified as to statements made to him by Sally Campbell on 8 September 1972. His testimony tended to corroborate Sally Campbell's testimony.

Dr. Steven Leroy Curry, admitted as an expert in the field of gynecology, stated that he examined Miss Campbell on the evening of 8 September 1972 at about 9:00 p.m., and after performing a physical examination (including a smear which revealed the presence of sperm) it was his opinion that Sally Campbell could have been raped. He found no damage to the

State v. Arnold

hymen or membrane which might have occurred within 24 hours of his examination.

The testimony of the witnesses Holly Hoxeng, Carol Chase and Miriam Kaufman will be hereinafter considered.

The testimony of other State's witnesses is cumulative or not pertinent to decision.

Defendant testified that he was a resident of Mountain City, Tennessee, and he first saw Sally Campbell at about 9:00 p.m. on 7 September 1972 while he was on his way to Duke Hospital to see someone about a job. Miss Campbell was standing in a curve in the road in the act of "hitch-hiking." He stopped and she entered his car. He then asked her if she wanted to ride around for a while and she replied, "Yes, why not?" He drove ahead for a few blocks and turned back in the direction from which he had come. They exchanged names and talked casually about music as they proceeded on Route 70 and then down a rural road to a spot near a pond where he had previously fished. Miss Campbell at no time asked him to turn around or to go back. There, with her consent, he engaged in one act of sexual intercourse with Sally Campbell. They talked for a while, and she then directed him to her dormitory. When they arrived at the dormitory, they kissed good night, and he left. When he saw Sally Campbell at about 9:00 or 9:30 on the night of 7 September 1972, it was the first time he had ever seen her, and it was the first time on that day that he had been by the place where he picked her up. Defendant stated that he went back to Tennessee a day or two after the 7th of September because he had obtained employment there.

Patsy Arnold, defendant's wife, testified that defendant was a good husband who tried his best to support his family. She stated that she had received letters from her husband after his arrest which contained denials of his guilt of the charges pending against him.

Dr. James Ray Dingfelder, admitted as an expert in gynecology, stated that in his opinion ". . . a violent and forceful penetration of the vagina of a female person who is resisting and who had constricted or tight muscles could produce irritation or inflammation. This result is likely but not absolutely necessary."

---

State v. Arnold

---

The jury returned a verdict of guilty of rape. Defendant appealed from judgment sentencing him to life imprisonment.

*Attorney General Robert Morgan by Associate Attorney General Thomas Maddox, Jr., for the State.*

*Michael D. Levine for defendant appellant.*

BRANCH, Justice.

[1] Defendant first contends that the trial judge committed reversible error by expressing an opinion prejudicial to defendant in the presence of the jury.

During the cross-examination of Sally Campbell, defendant's counsel introduced several photographs into evidence. At that time the following exchange occurred:

"COURT: All right, gentlemen. Mr. Levine, have you got any more Exhibits you intend to introduce during this trial, any statements, documents, anything of that nature?

MR. LEVINE: Yes, sir. There may be one or two more things.

COURT: All right. Mr. Pierce, do you have any documents or physical evidence you plan to introduce?

MR. PIERCE: No, sir, your honor.

COURT: All right, I want you both to get together. Show each other everything you want to introduce so we don't have the jury sitting here waiting while you all go over the stuff you should have done beforehand. Let's get on with this."

It is well established that every person charged with a crime has a right to trial before an impartial judge and an unprejudiced jury. G.S. 1-180. *State v. McBryde,* 270 N.C. 776, 155 S.E. 2d 266; *State v. Belk,* 268 N.C. 320, 150 S.E. 2d 481. And any intimation or expressed opinion by the judge at any time during the trial which prejudices the jury against the accused is ground for a new trial. *State v. Frazier,* 278 N.C. 458, 180 S.E. 2d 128; *State v. Douglas,* 268 N.C. 267, 150 S.E. 2d 412. However, whether the accused was deprived of a fair trial by the trial judge's remarks must be determined by the

probable effect upon the jury in light of all attendant circumstances, the burden of showing prejudice being upon the appellant. *State v. Faust,* 254 N.C. 101, 118 S.E. 2d 769; *State v. Gibson,* 233 N.C. 691, 65 S.E. 2d 508. The judge conducting a jury trial is the governor of the trial for the purpose of assuring its proper conduct and it is his right and duty, *inter alia,* to control the course of the trial to the end that the court's time be conserved and the witnesses be protected from over-prolonged examination. *State v. Frazier, supra; State v. Mansell,* 192 N.C. 20, 133 S.E. 190.

Here the judge's remarks were clearly addressed to *both* the Solicitor for the State and defendant's counsel for the purposes of insuring an orderly trial and conserving the court's time.

There is no merit in this assignment of error.

Defendant's next assignment of error relates to the admission of testimony of the witnesses Miriam Kaufman, Carol Chase and Holly Hoxeng.

His principal argument is directed to the testimony of Miriam Kaufman, a student at Duke University. Miss Kaufman testified that she was waiting for a bus at the Gilbert-Adams bus stop on 7 September at about 4:40 p.m. when defendant drove up in a beige car and asked her if she wanted a ride. She accepted, but instead of taking her to West Campus he followed a route along Highway 70 into rural Orange County. Although he did not threaten her, he several times said that it was not going to cost her anything. Miss Kaufman became frightened and jumped out of the automobile. She managed to obtain a ride with one of her teachers who lived in the same area, and upon reaching the campus, she reported the incident to the Duke Security authorities.

In determining the admissibility of this evidence, we first consider its relevancy.

[2] Evidence is relevant if it has any logical tendency to prove a fact at issue in a case, Stansbury N. C. Evidence 2d Ed. § 77, and in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible. *State v. Hamilton,* 264 N.C. 277, 141 S.E. 2d 506; *State v. Knight,* 261 N.C. 17, 134 S.E. 2d 101; *State v. Ham,* 224 N.C. 128, 29 S.E. 2d 449. It is not required that evidence bear directly

on the question in issue, and evidence is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known, to properly understand their conduct or motives, or if it reasonably allows the jury to draw an inference as to a disputed fact. *Jones v. Hester,* 260 N.C. 264, 132 S.E. 2d 586; *Redding v. Braddy,* 258 N.C. 154, 128 S.E. 2d 147; and *Bank v. Stack,* 179 N.C. 514, 103 S.E. 6.

[3] All of the evidence in this case shows that defendant and prosecuting witness engaged in sexual intercourse, thus the ultimate issue for the jury was whether the act was with the consent of Sally Campbell. Defendant testified that he had not earlier on that day been near the spot where he picked up Sally Campbell. Whether Miss Campbell voluntarily accompanied the defendant to the secluded spot where the rape allegedly occurred is sharply controverted, as is the question of consent to the act of intercourse. Although the evidence under the attack does not bear directly upon the ultimate question before the jury, it does tend to shed some light upon the alleged crime and defendant's conduct and motives. We, therefore, hold that the evidence was relevant.

Relevant evidence is properly received as substantive evidence unless it is forbidden by some specific rule of law. *State ex. rel. Freeman v. Ponder,* 234 N.C. 294, 67 S.E. 2d 292. Stansbury N. C. Evidence 2d Ed. § 78.

Defendant cites *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364, for the exclusionary rule that "in a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense." However, *McClain* also enumerated several well recognized exceptions to the general rule therein stated. We quote one of the exceptions which we consider pertinent to decision:

"6. Evidence of other crimes is admissible when it tends to establish a common plan or scheme embracing the commission of a series of crimes so related to each other that proof of one or more tends to prove the crime charged and to connect the accused with its commission. . . . Evidence of other crimes receivable under this exception is ordinarily admissible under the other exceptions which sanction the use of such evidence to show criminal intent, guilty knowledge, or identity." (Citations omitted.)

In the case of *State v. Fowler*, 230 N.C. 470, 53 S.E. 2d 853, Stacy, C.J., stated: ". . . proof of the commission of other like offenses is competent to show the *quo animo*, intent, design, guilty knowledge or *scienter*, or to make out the *res gestae*, or to exhibit a chain of circumstances in respect of the matter on trial, when such crimes are so connected with the offense charged as to throw light upon one or more of these questions."

Miss Kaufman's testimony and Miss Campbell's testimony reveal striking similarities. The two alleged abductions occurred within a period of a few hours, and from the same location. On both occasions defendant followed approximately the same route into rural Orange County and he used identical language in an attempt to quell their fears.

In our opinion, Miriam Kaufman's testimony clearly disclosed a common plan, scheme and design by defendant to pick up a female person and carry her into rural Orange County in order to gratify his sexual desires.

[4] The remaining testimony challenged by this assignment of error was given by Miss Carol Chase and Miss Holly Hoxeng.

Miss Holly Hoxeng testified that between 3:30 and 4:00 p.m. on the afternoon of 7 September 1972 she saw a light-colored automobile with a Tennessee license plate parked near the Gilbert-Adams bus stop. She saw the driver say something to a girl who was standing near the automobile. She could not identify defendant as being the man sitting in this automobile.

Carol Chase testified that at about 4:30 p.m. on 7 September 1972 a man driving an automobile bearing a Tennessee license plate stopped and asked her if she wanted a ride to the Duke Campus. She refused his offer. Defendant was the operator of this automobile.

Decision as to the admission of the testimony of Miss Hoxeng and Miss Carol Chase is not complicated by the rule of law barring admission of evidence concerning prior criminal offenses. Their testimony presented circumstances, not too remote in time to have probative value, which tended to aid the jury in understanding the conduct and motives of the parties.

We hold that the trial judge correctly admitted the testimony of Miriam Kaufman, Carol Chase and Holly Hoxeng as substantive evidence.

[5]   Defendant contends that the trial judge's failure to grant his motions as of nonsuit resulted in reversible error. He argues that the evidence does not warrant an inference that defendant had intercourse with the prosecuting witness by force and against her will.

Rape is the carnal knowledge of a female, by force and against her will. *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44; *State v. Johnson,* 226 N.C. 671, 40 S.E. 2d 113.

A motion for judgment as of nonsuit presents a question of law for the court as to whether there is reasonable basis for the jury to find that the offense charged was committed by accused. In deciding this question, the trial judge must consider the State's evidence in the light most favorable to the State and without considering evidence of the defendant in conflict therewith.

It is for the jury to determine the truth and credibility of the evidence. *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469; *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741.

The testimony of the prosecuting witness is replete with evidence that defendant, by force and against her will, had intercourse with her. We quote portions of this testimony:

"[S]he was afraid and did not want to be hurt, and that he handled her roughly as he pushed her down on the seat.

\*   \*   \*

"He held her arms down when they got in the way. Connie Lee Arnold, on this occasion, was stronger than she was, and she was not successfully able to resist him.

\*   \*   \*

"By way of 'force' she meant that when she would not touch his parts . . . or whatever else he wanted to have her do, he would put her hand or head in that position and would not release the pressure on that part of the body until she complied with what he wanted.

\*   \*   \*

". . . [S]he kept resisting because she didn't want to continue but it was of no avail; his drive was stronger than her power to resist him.

\*   \*   \*

"During each of these three times she did not consent to having intercourse and during each of these three times he forced her in the action.

*    *    *

"During the time that she and the driver were having sexual intercourse, she struggled at every point and resisted. She told him verbally, she pushed him away. She indicated her intense non-desire for this action to occur. All of the muscles in her body, including those around the vaginal area were at all times constricted and tight and tense.

*    *    *

"The defendant was physically stronger than she was on the occasion . . . she was not successfully able to fight him that night. . . ."

Admittedly there was testimony from the prosecuting witness which might have raised a reasonable doubt in the mind of a juror. However, the jury believed the State's evidence.

We hold that there was sufficient evidence to withstand defendant's motions as of nonsuit.

[6]  Defendant assigns as error the failure of the trial court to instruct the jury that they might find the defendant guilty of a lesser included offense.

In the case of *State v. Bryant,* 280 N.C. 551, 187 S.E. 2d 111, Justice Higgins speaking for the Court (Chief Justice Bobbitt and Justice Sharp dissenting) stated:

"The defendant has objected to the court's failure to submit to the jury the lesser included offense of assault with intent to commit rape. This objection cannot be sustained. All the evidence, including the defendant's testimony, disclosed completed acts of intercourse. The factual dispute was whether the acts were voluntary or as a result of defendant's use of force. Even consent if induced by fear, fright, or coercion, is equivalent to physical force. *State v. Primes,* [275 N.C. 61, 165 S.E. 2d 225]; *State v. Carter,* [265 N.C. 626, 144 S.E. 2d 826]. The court should not submit an issue in the absence of some evidence which tended to support it. The rule is stated in *State v. McNeil,* 277 N.C. 162, 176 S.E. 2d 732. 'The court (trial) charged the jury to return a verdict: (1) guilty of rape; (2) guilty of

---

---

rape with a recommendation that punishment be imprisonment for life in the State's prison; or (3) not guilty. Failure to find the defendant guilty of (1) or (2) required a verdict of not guilty. The defendant was not prejudiced by the charge which required the jury to acquit of all included lesser offenses. There was no evidence of the lesser included offenses, and the court was correct in refusing to permit the jury to consider them.' "

Here all of the evidence reveals a completed act or completed acts of sexual intercourse. The factual dispute relates only to whether the act or acts were by consent or as a result of force or coercion. We are unable to distinguish instant case from *State v. Bryant, supra,* and by authority of *Bryant,* this assignment of error is overruled.

[7]   Defendant's final assignment of error is that the trial judge erred by denying his motion to set aside the verdict as being against the greater weight of the evidence. This motion was addressed to the trial judge's discretion and was without merit. *State v. Henderson,* 276 N.C. 430, 173 S.E. 2d 291.

Defendant has failed to show prejudicial error which will warrant disturbing the verdict and judgment.

No error.

Chief Justice BOBBITT dissenting.

The testimony of prosecutrix was sufficient to support the verdict of guilty of rape. However, her testimony was contradicted by testimony of defendant on all crucial aspects of the case.

The preliminary statement in the majority opinion summarizes the testimony of prosecutrix and of defendant relating to the circumstances under which prosecutrix entered defendant's car, and to their conversation while riding through the streets of Durham and to the area where, according to both prosecutrix and defendant, the act(s) of sexual intercourse occurred.

Although contradicted at all points, there was ample evidence to support a finding that defendant was guilty of an assault with intent to commit rape. To convict one of the crime of an assault with intent to commit rape, "the State must prove (1) an assault by a male upon a female (2) with intent to commit rape, and the felonious intent is the intent to gratify his

---

---

passion on the person of the woman at all events against her will and notwithstanding any resistance she may make." *State v. Overcash*, 226 N.C. 632, 634, 39 S.E. 2d 810, 811 (1946), and cases cited.

Assuming that defendant was guilty of an assault with intent to commit rape, it does not necessarily follow that he was guilty of rape because he succeeded in having sexual intercourse with the prosecutrix. He testified positively that his sexual intercourse with prosecutrix was with her consent. Her testimony referred to their philosophical arguments, concluding with her statement that defendant had shown "his will was stronger than hers." Whether her submission was the result of overpersuasion was for jury consideration.

Of course, "[t]he force necessary to constitute rape need not be actual physical force. Fear, fright, or coercion may take the place of force." *State v. Primes*, 275 N.C. 61, 67, 165 S.E. 2d 225, 229 (1969). Here, the prosecutrix's testimony is that defendant never threatened to harm her physically; that he did not use, display or refer to a weapon of any kind; that he inflicted no bruises; and that her clothes were not torn or damaged. Nothing in her testimony indicated that she attempted any kind of vigorous physical resistance.

I disavow completely any intent to cast doubt upon the credibility of the testimony of the prosecutrix. In all probability, if I had been a juror, I would have returned the verdict of guilty of rape. However, where a defendant's testimony contradicts that of the prosecutrix as to rape and as to assault with intent to commit rape, the jury should not be confined to the single alternative of returning either a verdict of guilty of rape or a verdict of not guilty (of any offense) but should be permitted, if they consider the evidence warrants, to return a verdict of guilty of the lesser included felony of assault with intent to commit rape.

For the reasons fully stated and documented in my dissenting opinion in *State v. Bryant*, 280 N.C. 551, 187 S.E. 2d 111 (1972), I would award a new trial on account of the failure of the court to submit *for jury consideration* whether defendant was guilty of the lesser included felony of an assault with intent to commit rape.

Justice SHARP joins in this dissenting opinion.