490 A.2d 863

**COMMONWEALTH of Pennsylvania**

v.

**Donnell JONES, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 18, 1984.

Filed March 22, 1985.

Ronald J. Karasek, Bangor, for appellant.

John L. Obrecht, Assistant District Attorney, Northampton, for Commonwealth, appellee.

Before WIEAND, DEL SOLE and POPOVICH, JJ.

WIEAND, Judge:

■ The principal issue in this appeal is whether jurors in a criminal case may be permitted to disperse overnight after a case has been submitted to them for deliberation. Other issues raised by appellant are lacking in merit and will be displosed of summarily.

Donnell Jones was tried by jury jointly with a co-defendant, Ruben Odom. Jones was found guilty of two counts each of robbery, felonious restraint, recklessly endangering another person, terroristic threats, three counts of theft and one count of conspiracy. After post-trial motions had been denied, he was sentenced to serve not less than seven and one-half nor more than fifteen years in prison. This is a direct appeal from the judgment of sentence.

The Commonwealth's evidence showed that on July 21, 1982, at or about 3:15 p.m., Dennis Kelley responded to a knock at the front door of the home of Dr. John Nelson, where Kelley was residing, in Upper Mt. Bethel Township, Northampton County. Kelley identified the man at the door as Ruben Odom. On the pretense of asking for water for an overheated auto, Odom and at least one other person forced Kelley inside and bound and terrorized him. The men then began to ransack the house. At or about 3:30 p.m., Henry Newman, an employee of Commonwealth Telephone Company, observed picture frames being carried from the Nelson home. When Newman approached the man carrying the frames and asked about Dr. Nelson's whereabouts, he found himself looking into a drawn gun.

He, too, was bound, terrorized, and robbed. He identified Donnell Jones as the person whom he had seen carrying picture frames from the home and who had threatened him with a gun.

Russell Strouse was called as a defense witness by Ruben Odom, the co-defendant. During the course of Strouse's testimony, he said that he had observed Jones in an automobile with other persons on the evening of the robbery and that items removed from the Nelson home had been present in the vehicle. He also testified, without objection, that prior to the day of the robbery he had had a conversation with a person named Posten, who was also alleged to be a co-conspirator. During that conversation, Posten had told him of the plan to commit a crime at the Nelson home and named the persons who were going to participate. Odom, according to Strouse, had not been one of the persons identified by Posten. On cross-examination, the District Attorney was permitted to ask the witness, over objection, to name those persons who had been identified by Posten. Included among those named was the defendant, Donnell Jones.

■ The trial court overruled a hearsay objection to this testimony by Jones. However, the trial court carefully instructed the jury that Odom's cross-examination of Strouse was being permitted only to challenge the credibility of Strouse, who had been called as a defense witness, and that the witness's testimony could not be considered as substantive evidence against Jones. Specifically, the trial court said, the evidence was not to be considered as evidence to show that Jones had been a participant in the commission of the crime. In view of these instructions, it cannot be said that the trial court's ruling which allowed Strouse to be cross-examined fully about the statement made by Posten is a sufficient basis for awarding Jones a new trial.

■ Henry Newman made an in-court identification of appellant. He was not asked and did not testify concerning a series of photographs displayed to him on July 30, 1982. Officer Joseph N. Victory, Jr., however, testified that New-

man had identified Jones during a photographic display on July 30, 1982. This testimony was permitted over objection by appellant's counsel. The objection was based on an alleged pre-trial agreement between the District Attorney and Jones' counsel that the District Attorney would not refer to the photographic identification. The District Attorney denied having agreed to refrain from any reference to this identification. The trial court, having no record of the agreement and deeming the evidence relevant, overruled the objection. We find no error in the trial court's handling of this objection. Our review of the record also fails to disclose the terms of the District Attorney's pre-trial agreement, if any.

The jury began its deliberations at 3:30 p.m. At 11:15 p.m. a verdict had not been reached. When the trial judge summoned the jurors into the courtroom, he was told that the jury was not deadlocked but desired additional time. Appellant moved for a mistrial. This was denied. Because of the lateness of the hour, the court excused the jurors and allowed them to return to their homes until the following morning at 9:30. Before the jurors separated, however, the court carefully admonished them not to discuss the case with anyone and not to listen to or read media coverage of the trial. The jury reconvened at 9:30 on the following morning to continue deliberations and arrived at a verdict at 1:45 p.m. Appellant contends that it was error (1) to deny his motion for mistrial and (2) to excuse the jury until the following morning.

We find no abuse of the trial court's exercise of its discretion to deny the motion for mistrial. There was no reason to believe that the jury had become deadlocked and no reason to believe that a verdict would not be reached after further deliberations. The court was not required to declare a mistrial merely because of the duration of the jury's deliberations.

Early decisions in American jurisprudence have held that jurors literally became prisoners of the court after a case was submitted to them for decision. A rule of segregation was strictly enforced after deliberations had been com-

menced in order to prevent any possibility of factual or other contamination, whether inadvertent or by design, as a result of having received extra-judicial information. Thus, jury attendants were sworn to take the jury to some safe and convenient place and suffer no one to speak to the jurors without permission of the court. Modern cases suggest a tendency to shift from the strictness of the earlier rule. Thus, "[a] considerable number of jurisdictions have taken the position that in [misdemeanor and] noncapital felony cases the trial court has authority, in the exercise of sound discretion (subject to review by an appellate court) to permit the jurors to disperse after a proper admonition, so that error may not be predicated upon such dispersal without proof by the complaining party that such separation resulted in prejudice or harm to the defendant." Annot., Separation of Jury in Criminal Case After Submission of Cause, 72 A.L.R.3d 248, 253–254 (1976). See: *People v. Maestas,* 187 Colo. 107, 528 P.2d 916 (1974); *People v. Gonzales,* 44 Colo.App. 411, 631 P.2d 1170 (1981); *Bryant v. State,* 246 Ind. 17, 202 N.E.2d 161 (1964); *State v. Atwood,* 83 N.M. 416, 492 P.2d 1279 (1971), *cert. denied,* 83 N.M. 395, 492 P.2d 1258 (1972). See also: *State v. Bynum,* 282 N.C. 552, 193 S.E.2d 725, *cert. denied,* 414 U.S. 836, 94 S.Ct. 182, 38 L.Ed.2d 72 and *cert. denied,* 414 U.S. 869, 94 S.Ct. 182, 38 L.Ed.2d 116 (1973). Other states have achieved a similar result by statute. See: *People v. Murphy,* 35 Cal.App.3d 905, 111 Cal.Rptr. 295 (1973); *People v. Chain,* 22 Cal.App.3d 493, 99 Cal.Rptr. 472 (1971). Contra: *Follrad v. State,* 428 N.E.2d 1201 (Ind.1981); *Collins v. State,* 589 P.2d 1283 (Wyo.1979). All jurisdictions, however, require cautionary instructions regarding jurors' conduct during such periods of dispersal. Accord: Annot., 72 A.L.R.3d 248, 268–270 (1976); 75 Am.Jur.2d *Trial* § 974 (1974).

We conclude that this is the better rule. It is also the rule suggested by Pa.R.Crim.P. 1111, which authorizes a trial court, in its discretion, to order sequestration of trial jurors or to vacate a prior order of sequestration as the interests of justice may require.

■ In the instant case, appellant has not been able to point to any specific prejudice as a result of the overnight dispersal of the jury. Moreover, the trial court's pre-dispersal instructions carefully admonished the jurors regarding their duties and the limitations applicable to their conduct while they were at their homes overnight.[1] In the absence of prejudice to the defendant or an abuse of discretion by the trial court, therefore, we hold that a new trial will not be required merely because jurors were permitted, after deliberations had commenced, to disperse and return to their homes overnight.

■ Appellant also complains that the trial court did not poll the jury upon request. This is incorrect. The trial court did poll the jury following the return of a verdict.

1. The trial court admonished the jury as follows:

... I am not going to ask you to continue on this evening. We already are at twenty minutes of twelve, and I think you need a break for a rest. Therefore, I am going to permit you to return to your homes, get away from this case and thoughts about it for a while and return tomorrow morning and resume your deliberations.

Now, it is absolutely essential that you take advantage of this adjournment only for that purpose; that is, just get away from the case for a while and exchanging ideas on it and get a good night's sleep. Do not talk about the case at all, not with your spouses, anyone, at all, when you go home.

I must bar your newspapers completely. I have been letting you read them and saying if you come across a news article do not read the news article about the case. But for tonight only, no newspapers at all. You cannot read them at all. Save them and read them after you have been discharged from this case because you are only catching up with one day's edition.

No radios because what you are doing and where we are in this trial could be the subject of news broadcasts. I do not think it is on the television, but I do not want you to watch television because you might see something connected to the law, a drama or whatever it is, and, who knows, that might suggest something to you just because you are watching a play or movie where the subject is something about law and court. So no television at all for tonight.

So, really, I am just letting you go home to go to bed and get some rest and report back tomorrow morning. Follow that literally. If you do, when you return tomorrow you will be picking up your discussions and deliberations just the same as if we had not had a recess, nothing new would have happened except that you would have had the opportunity to get some sleep.

The court did not abuse its discretion by refusing to poll the jurors separately on each count on which they had found appellant guilty.

■ Appellant next contends that the trial court erred when it denied his motion for new trial based on the alleged recantation by Russell Strouse. Russell Strouse was not a Commonwealth witness; he was a defense witness. His alleged recantation has been adequately reviewed and considered in a separate opinion filed by the trial court. We find no error in the court's rejection of Strouse's recanting testimony or in its denial of a new trial based thereon.

■ Finally, appellant contends that the trial court abused its discretion by imposing too severe a sentence. More specifically, he argues that the court refused to give adequate consideration to a sentence of probation or immediate parole. Our review of the record discloses no abuse of discretion on the part of the sentencing court. The reasons for the sentence cover four full pages of the record and suggest quite clearly that the court considered the nature of the offense, appellant's record, which included a prior conviction for robbery, appellant's drinking problem and the likelihood that he would become involved in future criminal activity.

The judgment of sentence is affirmed.